and I understand counsel are going to combine the arguments in those first two cases and do ten minutes per side, reserving some time in your case, Mr. Bellantoni, for rebuttal. Yes, Judge. Fine with us. You can proceed. Good morning, may it please the Court. My name is Rory Bellantoni. I represent the plaintiff In this case, the district court took the mandate or a mandated statute of the IDEA, a stay-put provision, and turned it into something discretionary. The judge, I believe, improperly dismissed this case. We look at the first category of students. She indicated, bless her, that the matter was moot as to these students because balances were paid in full. There's a discrepancy as to whether balances were paid in full. The contracts, and we argue in our complaint that pendency should be what the parents are required to pay for the contracts. Many of the final administrative orders that form the basis of pendency require payment in accordance with those contracts. I have thought that your brief said that what remains here is the appeal from the denial of a preliminary injunction. I'm sorry? I thought your brief said that what remains here is the appeal from the denial of a preliminary injunction. It's the dismissal of the complaint and the denial. Two things happened at the same time. The judge dismissed it. She granted the defendant's 12B6, 12B1 motion, denied our preliminary injunction motion. At the same time, she dismissed the complaint, and for a lot of the same reasons. This matter focuses on pendency and the DOE's obligation to pay pendency for these students. While Mendez is discussed throughout the case, in this matter, the DOE's obligation to pay or fund the students' pendency was triggered in July of 2024. This matter wasn't decided by Judge Schofield until May. But in the briefing, it does say you're addressing whether the district court erred in rejecting the plaintiff's request for temporary injunctive relief and request for a preliminary injunction. And my difficulty is, as I understand it now, the school year is over. So some of, maybe all of the children have pendency orders at this point, but the school year related to those pendency orders has passed. So what is left for this case? Well, there are still outstanding payments from the 24-25 year. Even though there are pendency orders, there's still, if you look at Judge Schofield's third category, the DOE disputes whether it must reimburse for transportation and nursing. That's an issue that should have been resolved beyond a 12B6, 12B1 motion. The administrative orders for those students require transportation and for some of the kids, nursing. Why they wouldn't be obligated to pay that, they can make the argument, but that's a dispute. And that transportation money, Your Honor, is still outstanding. And by the way, some of these DPCs aren't resolved as we move into the new year. So pendency continues. And if I can go back for a second. I'm sorry. Go ahead, Judge. Actually, if you could illuminate me about that, that would be helpful. Of the children in both suits, do they all have pendency orders at this point? If you could walk us through how they're similarly situated or differently situated. Many of the students had, going into the new school year, the pendency carries over because the DPCs from last year weren't resolved. Now, some of them file a new due process complaint, and that would trigger new pendency. But what I wanted, if I can just go back to something Your Honor mentioned about pendency orders. That's also part of the problem. For some reason, we've moved from an automatic injunction where the DOE is supposed to identify the last administrative order on appeal that forms the base of pendency. When the DPC is filed, that triggers their obligation to fund or pay pendency. But their position now, and they put this in writing to Judge Feller. But first of all, they have an eye-brain position. They contest pendency in most tuition cases, and they say every pendency case. So every one of these students has contested pendency. That's their policy. But even more, they push for orders. So it takes three or four months. The FOFD is decided with the pendency order, and it shouldn't be. If it's appeal, the DOE says, well, there is no pendency because we're appealing the pendency order. But the automatic nature of pendency is, no, no, you have to maintain this placement. And I understand, based on Mendez, funding payments aren't automatic and immediate. But they're no longer recognizing, when Mendez was decided, it was the DOE's position to fill out pendency forms and agree as to the pendency placement. They no longer do that. They contest pendency for these students in every case and wait for an order. So if they're going to wait for an order, instead of waiting for various IHOs to issue the orders, we went to federal court. Now, some judges are giving us those orders. Judge Torres recently. Ibram was pendency. Judge Etkin recently. And Judge Vargas. Judge Vargas found that the DOE wasn't operating in good faith because they kept telling her, after conference after conference, pendency was going to be paid, pendency was going to be paid. We're waiting for an order. And she finally said, enough is enough. You don't have to wait for an order. It's supposed to be automatic. And going through this decision, if you look, I guess it's a judge, the district court judge, basically indicates for the Category 3, she talks about those payment obligations have not finalized. And she talks about the scope and the breadth of the payment obligations are being decided right now in the administrative hearing. That's reimbursement in connection with the IEP. Pendency isn't something that should be litigated on a parallel track. And that's what's happening. They're litigating the IEP over here and pendency over here. So in one case, we've got an IHO who issued a pendency order that contravened Judge Torres. Judge Torres said the last administrative order is pendency. The IHO went back three years to an IEP. So not only are we getting inconsistent rulings, we're getting rulings that don't track with the district court. So do you agree that with the end of the school year, your client's claim for a pendency injunction is moot? At the end of the school year, I do not. And I'll tell you why, Your Honor. In Mendez, I wrote in that complaint that we were entitled to funding for the school year. And Judge Nathan said it doesn't end at the end of the school year. It ends when a DPC is finally resolved. That could be in January. That could be next year. So pendency for a due process complaint, if there's a decision and it's appealed to the SRO and then appealed to district court, while we're litigating that case, the DPC for this school year or last school year isn't final. So pendency continues, as 1415J says, through all administrative and judicial proceedings. In this circuit, it's up to and through. In some, it's the sedition court level. But certainly not just the end of the school year. So we'll hear from your adversary. Thank you, Your Honor. Three minutes. I'm sorry. May it please the Court, Diana Lawless on behalf of the New York City Department of Education and its school's chancellor. I want to try to just back up and make this as simple as possible. Under the scheme that Congress devised under the IDA, payments for reimbursement for private schooling are done year to year on due process complaints. There's always going to be a new IEP and there's going to be a new administrative process and a new due process complaint. I hear opposing counsel saying something about how this pendency just keeps going, moving forward. They asked for payments for 2024 to 2025 school year. That is all that is at issue at this case. There's a new determination that has been or there's a new due process complaint for each year. Public funding is determined for every independent school year. To talk about what Judge Jacobs was talking about, in this context, the pendency injunction, the preliminary injunction are basically one and the same. This is our reading was an action under the state put provision of the IDA to fund the school year and fund the pendency placement for that school year. And we believe that this is governed exclusively or it's really the same case as Mendez, where this Court held that the state put provision entitles families to automatic relief with respect to educational placement, which if you look at the prior cases like Ventura de Paulino, if it has been that, the point of the remedy is that it is to prevent the school district from resisting payment amounts when there's been, to the extent that there's a unilateral change in placement so that the child can no longer effectively attend the school. That is not the case here. These children were attending the entire time. And in Mendez, the Court said that there's no automatic relief with respect to payments. A court can provide relief under the injunctive provision as to payments only if they can show that delay or failure to pay has threatened the child's placement. There's no indication that that happened all through the year. The children all attended all through the year. There was nothing for the Court to enjoin. And I would point this Court to, it's 20, well, a panel of this Court's summary order in Abrams in 2021, which was basically the identical situation. Even though there were still things outstanding because... Which panel decision in 2021? Oh, Abrams. The case is called Abrams. It's a summary order. Do you have a number? I have the case numbers 20, 38, 99 cited on page 25 of our brief. There, the Court, after the end of the school year, rejected the claims. And all these cases were brought by the same counsel for students representing the same school, who attend the same school, that the DOE immediately make all outstanding payments allegedly due under the pendency orders, which is what my opposing counsel is saying. And they had to agree that the students were not facing removal. And then the Court held that the automatic injunction was unavailable because both sides agreed there was no risk of the students losing their pendency placement while the dispute regarding past payments continued to be litigated. That's... In regards to the past payment, is there anything in play other than these so-called late fees? According to my adversary, he believes that there are late fees at play. In most situations, there are certain other categories that we mentioned in our brief where the Court in Mendez said that if they did not meet our standards for providing documentation so that we could provide payment in the usual course, those payments have been withheld. And that is clear under Mendez, that if they do not provide, in some cases, attendance records, in some cases, it's information about transportation, if they provide the documentation, the payments will issue. So DOE's policy has been like... So this is just like Mendez with the same attorneys, except these lawyers, the lawyers in Mendez, waited until the pendency orders to run to court. These... This time, they decided to try to get around it by moving, running, like, right after they filed due process complaints for the year. Nothing happened administratively. So once there's a pendency obligation, as was true for all the students in this case, DOE funds in its regular course the amount for tuition as it processes the complaints administratively, as it processes the claims administratively, which this Court in Mendez says we are allowed to do, particularly because it's public funding. And also, it's important that DOE is careful about and making sure that it's properly funding, because it's clear that this money can't be clawed back. Pendency payments are just for the time while the dispute, the IEP dispute, for the entire school year is being played out. So if, for instance, the briefing suggests that there's a controversy with regard to some of the students about transportation expenses, if those have not been paid and now the school year is over, the pendency administrative process would continue and you would pay those pursuant to a pendency order? Or are you talking about ultimately you decide if those should be paid after exhaustion of the full due process complaint? So at this point, it gets to be a little complicated because of the interplay of the injunction. So we say that this injunction is just for the amount that's needed to keep the children in school while the administrative proceeding is ongoing. I thought that's what pendency meant. Yeah, it is. So in terms of what's still disputed for the school year, at the same time, right, the child is kept in pendency but the due process complaint for the year makes its way through the two-step process in the state administrative proceedings and then also litigated in the district court if it's challenged. So for some reason, I'm not sure, I don't know how the ins and outs work in administrative cases, pendency orders, the IHOs issue both pendency orders and FOFDs, which are for the final school year, and sometimes those get litigated administratively in a district court together, which are just basically on the amount of reimbursement, if any. And my understanding is that for every single one of these children, as we laid out in our brief when we could and my adversary pointed out, there's letters being filed in the district court docket that keep up to date on each child in this case, that each, I'm under the impression that each child at this point has received a pendency order. Most of them, all except for one, had done it before the complaint was dismissed and that there are pendency, there are proceedings on that and has received FOFDs. There are disputes about the FOFDs being litigated by DOE and the parent before the SRO, which is the state appeals officer, and then also in the district court. So I do know of at least some of these that are in district court right now where the regular Burlington Carter test applies as to the burden shifting, whether this was the proper placement of the year, whether DOE provided a FAPE, offered a FAPE, whether this was the proper placement for the year, and then the amount of reimbursement, if any. So it's not- I'm going to ask you to give me a little help on this. Sure. Let's say a student is requesting transportation costs. And some of the figures that pop out of these cases, I mean, I have no personal knowledge or experience, but it just seemed to me to be just shocking. I mean, how did we get to $115,000 transportation costs for one student for one year? I mean, you could buy a van and have a full-time chauffeur for that amount of money. What's going on? I think that's for counsel on the other side to answer. But we litigate these issues in before the administrative officers, and with respect to those issues that decided them. And then it also, it's just not everything they ask for. If there is a penancy order, the penancy is the prior agreed-upon placement. So sometimes the individual administrative officers have ordered transportation. Sometimes they have ordered that DOE has to reimburse. Sometimes they've ordered that DOE, which contracts with bus services itself, should be the one to be paying for it. So that's how that gets resolved with regard to the year-to-year payment, the amount that DOE ultimately owes for the child's tuition for the year. That has nothing to do with my adversary has never said that the child is threatened. None of these children were unable to attend I-BRAIN with all their regular services throughout the entire school year that was at issue. Therefore, we think they just ran to court to see if they could get everything they wanted to charge us. That's not how the – that's not how this Court has held that the penancy injunction works, the state put statute works. And for that reason, we agree that we believe that this case falls directly under Mendez, and that under that precedent, the district court properly dismissed the complaint, and we ask that this Court affirm. There is no administrative exhaustion requirement of any kind, is there? Correct. There is no administrative exhaustion requirement as dependency, which is what this Court said in Ventura de Polino. But what it said – I've been looking at these cases for years. It seems odd that as soon as the claim is filed administratively, a lawsuit is started in federal court as sort of a companion, and then the two are told what's going on, maybe, and as things drop off, they drop off. It looks like the federal litigation is just sort of the club that is used for promoting the administrative proceeding. Well, I think we agree that it's an unusual procedure. We think that this is not the way to go. We do think that if there – I believe – But there's no – you have not challenged the simultaneous proceeding of the same – seeking the same relief administratively and in federal court at the same time. I don't know if there's – we have many cases, right, particularly with this school. I believe there's 60 students that they litigate year to year about, and I'm not keyed into the strategy for that. But we make these same arguments, which is dependency remedy is limited. It's if there is – the child cannot – if there's a question about the placement. That was Ventura de Polino, right, when the children first moved to the school. Is it equivalent? That's the appropriate inquiry about placement. The district court, in the first instance, without administrative exhaustion, could determine what the placement should be, what the school should be, what programs the children should have. That is really what this was designed for, so there's not a gap in the child's education while a dispute with the school district goes on, so it's a temporary stopgap. So if none of the students at issue here have been deprived of a single day of schooling for the year that is at issue. That's our understanding. Then I take it you want the lawsuit dismissed. Yes, that's why. And that's because under Mendez, where they were presented with – this Court was presented with the same problem, that to the extent that because the statute means that the child has to be kept in their educational placement while the administrative – And the child has been kept. Right. That means that that's why the question of payments, when the question of payments rather than the physical placement and programs were raised. But suppose the child is kept in the same placement, but the government doesn't pay. Right. At all. Right. So I think that's – that also gets a little interesting in the case law, where the government can't be recalcitrant, right? So that's why it's the – I think that's why this Court made the stand on that. The government can't be recalcitrant? Well, totally recalcitrant. The government cannot forego its obligation. Under the IDA statute, Congress intended that the government would not stop funding wholesale. And that's why the Court, under this limited provision, is allowed to order the amount of payments that are required if there's going to be disruption of placement. There needs to be payments made, expedited payments to keep the child in placement. The government cannot be prevented. And some of the cases here have talked about this. What's the effect of dependency orders, right? And there, the courts have said, if there is a pendency order, which here, there became pendency orders for all these children, DOE has an obligation to pay it unless it further challenges it administratively. DOE makes that payment. And that's why this Court has said, I believe it was the Sheff case, that was a summary order, and also in the Abrams case, which was a summary order, which is there is nothing left to enjoin. There is nothing left to order as injunctive relief. Because if there was an administrative order requiring DOE to make the payment, that all this Court would be able to do, all the district court would be able to do, is to order DOE to follow an existing order. There is nothing else that could be done. And would access to the required educational opportunity be impaired if there were no payment for transportation? That is something that the parent, on behalf of the student, has to demonstrate. And there is no demonstration of that here, that none of this was happening. The school, for whatever reason, the school was letting this continue. The school was letting these children attend. If there was some obstacle, that is something that could be presented properly to the district court for an injunctive relief in this situation, where if it really was something that threatened the placement, the district court could evaluate that based on the showing made by the parent and could order that DOE fund transportation, the school district funds the transportation for the penancy period, the period until the ultimate administrative dispute on the money at the end comes out. But if while the case is pending before the district court, that period ends, then the district court should dismiss. Yes, because it becomes moot. Like the request for relief becomes moot because it is specifically for the school year. And the injunction is designed only to keep the child in the school for the school year. So there is nothing like that. Let me ask you this. Can you help me with a little background information, please? The funds that we are talking about here under the IDEA, are they New York funds or federal funds or both? Where does this money come from? I had heard that this question had come up before, and I apologize for not being able to research it directly. But this does come from the pot of money that is the DOE's money. I cannot, I don't have a breakdown of how much of that. Some of it might be federally funded through, you know, federal, but it's still taxpayer money no matter how you slice it. It's still somebody's taxpayer money that the DOE has an obligation to pay. It has a whole unit that does processing of these claims, and that's what happens. But it is undisputed that it's the pot of money that is from the public FISC, whether it comes from federal or not. It does come from DOE. There's certain funding allocated for this claim. And you don't know which? I don't know specifically what it is, but I think my answer to that is no matter what, it's public money. I don't know that it's just going to be the federal government that's paying for this. I don't think that's true, but I can't make a representation about what any percentages or anything would be. And then one final question. Sure. How many eye-brain cases are in federal court? I will personally say, like, unfortunately, I handle the appeals side. We don't have a good count, but I think it's pretty much one at least for every one of these students every year. I know of at least these are 13 students left where there's cases pending regarding the due process complaints for this school year. I know of ones in the pipeline from prior school years. I know one from this current school year. So it's about 60 students, I believe. And even though we have tens of thousands of students that are subject to funding under the IDA, a bulk, a very large number of the litigation, it's definitely in the dozens of cases that come from this school, specifically related to these students. And if you look at the names, it's multiple students. Like, it's the same students, the same parents' name in many of the litigations. Some of the plaintiffs here are actually the same plaintiffs from Mendez. So this really takes up, I will say, a bulk of our IDA litigation, our IDA attention, when there's tens of thousands of students who also receive these claims and receive the attention to DOE's payment processes for this, which is why this group of students can't cut the line. They can't come to the foreword, come to court and say, pay us everything we want right now. We're processing tens of thousands of claims. We're making sure that the children being provided education, we're making sure we're funding the services. So we can't drop everything and deal with a certain group of students as soon as they believe that they're entitled to the funding that the school says is what the school wants to charge for tuition. All right. If Your Honors have no further questions, we ask that you affirm.  Mr. Bellantoni, this is my first case in which I-BRAIN is the school. Could you just let me know how long the school has been in existence? This school was another school originally. It was I-HOPE, and then it was Ventura, then Paulino, and the kids went from I-HOPE to I-BRAIN. So 2018, 19 until today. And if I could just answer your question. In Ventura, the second page, the IDA authorizes disbursement of federal funds to states that develop appropriate plans to, among other things, provide a free and appropriate public education to children with disabilities. It's in exchange for those funds that the DOE promises or agrees to do a lot of the things that they're complaining about now. So are all the funds that-does-is New York State obligated to supplement the federal funds or are all the federal funds we're talking about in this case, all the payments we're talking about in this case, federal funds? Your Honor, I don't know when they get the federal funds, the state, and they push it through whether some of their own money comes down for special education and then gets combined with the IDA funds. I don't know how it's split, but I know there are federal funds for these-for the IDEA to provide a free, appropriate public education. And one of the things that procedurally the district agrees or promises to do in exchange for those funds is provide pendency. And they agree. They provide it whether or not the parent's claim for that school year is meritorious. And they agree that if they pay it, they can't call it back. So- Let me ask you something that's slightly different. How many eye-brain cases are there pending in federal court in New York? Your Honor, open, closed, I don't know the number. How many are pending? In the district court? Here? In the district court? There's a good number? You're representing all the plaintiffs. I'm not sure some of them close, some of them don't. Maybe 30 or 40 cases that are pending, Your Honor. And part of that reason is I have 60 families that attend eye-brain. And as I said before, the DOE has taken a position they don't take with other schools. And in a letter to Judge Farrell, they say in every eye-brain case, not every disability, not every student with TBI, every eye-brain case, they can test pendency. And by the way, Your Honor, when I say the number of cases, they're not all pendency. Some of them involve if we lose in front of the SRO, we appeal to the district court. Others might be an action to enforce an FOFB because there's a discrepancy over whether they should fund transportation pursuant to a contract or days to students in school. And that's just something that's contested. It's not just eye-brain or myself running for federal court. Does eye-brain use transportation services in addition to the company owned by your wife? Not my wife. Who's? Mr. Donahue? Mr. Donahue. Yeah. Not me, Judge. Sorry. The school doesn't use them. The parents contract and they're free to contract with any provider. There may be a handful of parents who have, you know, opted to take their own student to school. But they don't have to use the transportation. They don't have to use Donahue. No. Okay. And to respond to your question before, these kids, one or two to a van. This is not a van like a regular school bus. They're wheelchair-bound, non-verbal, non-ambulatory, travel with a travel nurse. This is expensive to get these kids on a bus and monitor the medical needs that they have. Got it. And especially for pendency, Your Honor, there would have been an IHO and or an SRO who took testimony and found this right not to be unreasonable because these aren't cases where we're asking for transportation in the first instance. We won. Last year, the year before, the DOE denied one student, all students, every student here, a fake. Eyebring was found to be appropriate and they were required to fund that program. So if transportation is high, the DOE, you know, they say it's high, but they don't come to the admin hearings and prove it's high. They don't come in and say that competitive transportation companies can do this for half the price. They just don't do it. A few things, if I can, real quick. Eyebring was different than this case. Does Edson deny our request for a PI because the school year ended, but Judge Schofield granted it in Araujo. Those cases are not before us, right? No, no, but the counsel mentioned Eyebring before and said it was just like Mendez. Well, it kind of wasn't because, Judge, part of your reasoning in Eyebring was Judge Edson got it right, but in any event, they have an injunction from Judge Schofield. So whatever you're seeking now, you don't need. Mendez. Mendez didn't dismiss Mendez, right? When Mendez was reversed, Judge Nathan, it went back to the district court, and the first Wednesday of every month, Judge, Magistrate Judge Aaron made sure that the DOE was paying what they were supposed to pay. And it wasn't an easy task. It went on from April to September before that case was finally closed. Yes, I think we understand your argument, Mr. Balentone. Thank you very much. Thank you, Judge. Yes. And we'll take the matter under advisement.